IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THE FIRST YEARS, INC. and
LEARNING CURVE BRANDS, INC.,

OPINION and ORDER

                Plaintiffs,

07-cv-558-bbc

     v.

MUNCHKIN, INC.,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In this patent infringement suit, plaintiffs The First Years, Inc. and Learning Curve Brands, Inc. alleged that defendant Munchkin, Inc.'s disposable "sippy cups" with snap-on lids were infringing two of its patents: United States Patents Nos. 6,976,604 (the '604 patent) and 7,185,784 (the '784 patent). On the eve of trial, the parties settled, and on September 22, 2008, a consent judgment was entered. Among the terms of that judgment was one under which defendant was "permanently enjoined and restrained from infringing any claim of the '784 patent after September 30, 2008, except as has been agreed upon in writing by the parties."

Now before the court is plaintiff Learning Curve's motion to hold defendant in

1

contempt. (Learning Curve is now the sole owner of the '784 patent. For the purpose of this opinion, I will refer to Learning Curve as "plaintiff" because The First Years plays no part.) Plaintiff contends that defendant is violating the permanent injunction not to infringe the '784 patent by selling an infringing product. In opposition, defendant contends that contempt proceedings are not appropriate and in the alternative that the court should conclude that defendant's new product does *not* infringe or that plaintiff is estopped from asserting the '784 patent against the new product. I conclude that contempt proceedings are not appropriate and will decline to decide whether defendant's new product is infringing and deny plaintiff's motion to hold defendant in contempt. For the same reason, I will not decide whether plaintiff is estopped from asserting the '784 patent against the new product. Plaintiff will have to pursue its infringement claims and defendant its noninfringement and estoppel defenses in the new lawsuit that plaintiff filed, Learning Curve Brands, Inc. v. Munchkin, Inc., 09-cv-416-bbc.

Plaintiff contends that defendant is selling a new product, the "Twist Tight Re-usable Spill-Proof Cup & Lid." As the name indicates, unlike the original product with its snap-on lid, the new product has screw-on lids. On its face, the broad language of the consent judgment does not limit the injunction to the original product, suggesting that the injunction would cover *any* product of defendant's that infringes the '784 patent. However, the Court of Appeals for the Federal Circuit has held that even under such broad injunctions, contempt

2

proceedings "are available only with respect to devices previously admitted or adjudged to infringe, and to other devices which are no more than colorably different therefrom and which clearly are infringements of the patent." KSM Fastening Systems, Inc. v. H.A. Jones Co., Inc., 776 F.2d 1522, 1526 (Fed. Cir. 1985).

As the Court of Appeals for the Federal Circuit explained, KSM requires a court to first determine whether a contempt hearing is the appropriate forum in which to determine whether a new product infringes (as opposed to requiring the parties to file a separate infringement action) by comparing the new and original products and deciding whether a "substantial open issue of infringement" is raised by the new device. Additive Controls & Measurement Systems, Inc. v. Flowdata, Inc., 154 F.3d 1345, 1349 (Fed Cir. 1998). Only after making that determination should the court address the question of infringement in the context of contempt proceedings. Id.

KSM and Additive Controls leave unclear exactly what makes a change in products "merely colorable," what creates a "substantial open issue of infringement" and how a court should compare the new product, the original product and the claims of the patent to make these determinations. As a starting point, contempt proceedings may be appropriate when changes to a product relate only to features not claimed in the patent because such changes are "merely colorable." McCullough Tool Co. v. Well Surveys, Inc., 395 F.2d 230, 233 (10th Cir. 1968) (finding difference between products merely "colorable" and therefore

3

grounds for contempt where change was "merely a change in form with the new form serving the same function as the old"); <u>Wadsworth Electric Manufacturing Co. v. Westinghouse Electric & Manufacturing Co.</u>, 71 F.2d 850, 852 (6th Cir. 1934) (same); <u>see also</u> <u>American Foundry & Manufacturing Co. v. Josam</u>, 79 F.2d 116, 117 (8th Cir. 1985) (contempt proceedings may be appropriate when changes are "merely colorable" and "without essential change in the nature of the device").

In addition, the question whether a contempt hearing is the proper forum should be considered in light of the following "conflicting interests":

> Allowing the patentee to proceed by a summary contempt proceeding in all cases would unnecessarily deter parties from marketing new devices that are legitimately outside the scope of the patent in question. On the other hand, to require in each instance the patentee to institute a new infringement suit diminishes the significance of the patent and the order of the court holding the patent to be valid and infringed.

<u>KSM</u>, 776 F.2d at 1530 (quoting <u>McCullough Tool Co.</u>, 395 F.2d at 233).  In light of the usually summary nature of contempt proceedings, a court may decline to decide matters of infringement "if expert and other testimony subject to cross-examination would be helpful or necessary."  <u>KSM</u>, 776 F.2d at 1531.

Plaintiff contends that the new product is no more than "colorably different" and "clearly infringes" the '784 patent because, although the new product includes a new form of engagement (screw-on instead of snap-on), the changes in the product are not related to

4

elements claimed in the '784 patent and the cup continues to include each element of claim 1 of the '784 patent.  Regardless whether the screw-on feature itself is more than a colorable difference (a matter the parties dispute), other changes made to the cup are different enough to counsel against deciding the matter in a summary contempt proceeding.  The '784 patent requires, among other things, that (1) the lid's inner surface and the cup body's outer surface define "semi-circular arcs of similar radii"; (2) the lid and cup body have "interlocking features on an inboard side" including lips projecting from the lid and body to produce a nominal radial interference between the lips as the lid and body are engaged; and (3) the lid define a groove about its edge "sized to receive and snap over the rim of the main body." Cross sections of the new and original products show differences in the products that touch on these requirements.




Dkt. #284, at 9.

The new product, at the left, includes a lid (upper piece) and a body (lower piece) whose surfaces contain "radii" that are different from each other in ways not present in the

5

original product at the right.  In the new product, the radius groove of the inner surface of the lid and the radius of the upper surface of the cup rim diverge, apparently as a result of the threading in place on the cup and lid.  In the original suit, the term "similar radii" was not construed because the term was not in dispute.  Plaintiff suggests that the term was construed, when at pages 29 and 30 of the summary judgment opinion, I described the prior art related to the '784 patent, at one point describing the radii in terms of "similar shape." Dkt. #241.  What plaintiff fails to mention is that the description was drawn from the parties' proposed findings of fact and the description of the prior art did not further any issue related to infringement or invalidity because those matters were decided on other grounds.  Dkt. #241, at 50-52, 54-55.

Next, the "interlocking features" and "lips" of the respective products are different as well.  In particular, the lips on the original product (rightmost area of contact between lid and cup) at right are marked protrusions, while the "lips" on the new product (also rightmost area of contact between lid and cup) at left appear to have disappeared completely.  Even if some amount of protrusion remains in the new product that could be called a "lip," it is yet another question whether those lips have an "interlocking function," particularly in light of the fact that the threads appear to be performing an independent interlocking function. Although the two could work in tandem under the patent, the parties' testing leaves open the question whether the "lips" independently interlock or produce a "nominal radial

6

interference," as required under the patent.

Also, it is difficult to tell whether the new product's lid defines a groove about its edge "sized to receive and snap over the rim of the main body and form a seal," in light of the reduced degree of protrusion and the screw-on feature of the product. These are matters that plaintiff's expert's conclusory chart pointing to the cross-section do not answer.

Defendant contends that certain features of the new product establish clearly that the product is *not* infringing. However, as I have explained, the meaning of "similar radii," "sized to receive and snap . . . and form a seal," "interlocking features" and "lips," remain unclear, despite the parties' cursory discussions of the meaning of these terms. (Although "interlocking features" and "lips" were construed, issues related to the new product, such as degree of protrusion, were not addressed.)

Aside from arguing noninfringement on grounds related to the meaning of the above terms, defendant contends that the prosecution history of the '784 patent shows that the patentee has "disclaimed" threaded connections altogether. I am not persuaded. Although the patentee removed discussion about "threaded connections" from the specification, it did so in the context of narrowing the patent to the single group of claims it chose to prosecute, not in an attempt to exclude threaded connections. Defendant has not identified anything in the prosecution history that establishes an intent to exclude products that otherwise meet all the claim requirements but also include threads. It may be that threaded cups are

7

incompatible with the "sized to receive and snap . . .," but that is a matter I will not decide on the summary record before me.

I am persuaded that the question of the new product's infringement is not one that should be decided in a contempt proceeding.  The differences between the new and original product are more than "merely colorable" and I cannot say that the question of infringement is "clear."  Because I will deny plaintiff's motion to hold defendant in contempt, this is not the proper forum to address defendant's argument that plaintiff is estopped from bringing an infringement suit regarding the new product.


ORDER

IT IS ORDERED that the motion for a finding of contempt filed by plaintiff Learning Curve Brands, Inc., dkt. #282, is DENIED.

Entered this 26th day of October, 2009.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

8